# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

---------------------------------------------X
:
RAW FILMS, LTD., :
: Civil Action No. 1:11-CV-02939-TWT
            Plaintiff, :
:
    vs. :
:
JOHN DOES 1-32, :
:
            Defendants. :
:
:
---------------------------------------------X

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DOE 15'S MOTION TO QUASH SUBPOENA

## I.     INTRODUCTION

Defendant's Motion to Quash Subpoena is fundamentally flawed. Defendant alleges that he has an undue burden on the basis of being implicated in a crime without sufficient proof. First, Plaintiff has sufficient proof, as the overwhelming majority of courts have held, to subpoena Defendant's information. Second, and most importantly, Defendant is not being implicated in a crime. Plaintiff has filed a civil action against Defendant.

Indeed, at this stage of the litigation process, Plaintiff has no other option but to file suit against the owners of IP addresses to obtain the infringers identity. If this

Court were to follow Defendant's rationale, Plaintiff would have no recourse against the mass copyright infringement it suffers on a daily basis. Any such holding would be contrary to existing law and the express policy of the Copyright Office. The Register of Copyright stated to the Senate Judiciary Committee that adult entertainment companies have the right under copyright law to bring suits against individual infringers and should not apologize for doing so. "The law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works without permission <u>is infringement</u> and copyright owners <u>have every right to invoke the power of the courts to combat such activity</u>. Every court that has addressed the issue has agreed that this activity is infringement."[1]

## II.     ARGUMENT

### A. <u>Defendant Is Not Being Implicated in a Crime</u>

Plaintiff is not accusing Defendant of a federal crime. Plaintiff filed this suit in civil court and is a private corporation, with no ties to law enforcement. The purpose of revealing this information is solely to pursue Defendant in a civil manner for copyright infringement. This is Plaintiff's right under 17 U.S.C. §411. Defendant incorrectly argues an undue burden on the basis it "casts upon him suspicion of a federal crime absent the *imprimatur* of law enforcement or even a

---

[1] <u>See Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

'probable cause' by this Honorable Court." Def's. Mot. Quash at 2. It would be improper for this Court to hold a "probable cause" hearing because the subpoenaed information is not being used to charge Defendant with a crime. Notwithstanding the foregoing, it bears noting that the exact same process of IP lookups is used to obtain identifying information from Doe Defendants in criminal child pornography matters and probable cause is routinely found to obtain the subscriber's identity. See the testimony quoted below regarding the FBI's use of IP addresses in child pornography cases – which Plaintiff only cites for the purpose of underscoring that it too has substantial data deletion problems that necessitate joined suits.[2]

Additionally, Defendant goes so far as to imply that Plaintiff is accusing him of criminal activity. "Defendant Doe contends that the 'undue burden' contemplated by Rule 45 may also be reasonably interpreted to include unwarranted accusations of

---

[2] See Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://judiciary.house.gov/hearings/pdf/Weinstein_01252011.pdf, stating: In some ways, the problem of investigations being stymied by a lack of data retention is growing worse. One mid-size cell phone company does not retain any records, and others are moving in that direction. A cable Internet provider does not keep track of the Internet protocol addresses it assigns to customers, at all. Another keeps them for only seven days * * * In one ongoing case being investigated by the Criminal Division's Child Exploitation and Obscenity Section working with the Federal Bureau of Investigation and Immigration and Customs Enforcement, we are seeking to identify members of online groups using social networking sites to upload and trade images of the sexual abuse of children. * * * Investigators sent legal process to Internet service providers seeking to identify the distributors based on IP addresses that were six months old or less. Of the 172 requests, they received 33 separate responses noting that the requested information was no longer retained by the company because it was out of their data retention period. In other words, 19 percent of these requests resulted in no information about these offenders being provided due to lack of data retention. Indeed, lack of data retention has to date prevented us from identifying the investigation's chief U.S. target.

criminal activity against him implicit in Plaintiff's request for his personal information." (Def's. Mot. Quash at 3.)  To the best of undersigned's knowledge, no individual has ever been prosecuted by the Department of Justice for non-commercial file sharing and Plaintiff is not working the Department of Justice to prosecute the Doe Defendants here.  This is a civil case and it is unclear how Plaintiff's request for personal information could be perceived as implying accusations of criminal activity.  Plaintiff is asserting his right on the basis of concrete evidence of copyright infringement.  Since this in not a criminal matter, criminal standards for law enforcement should not be applied.

Defendant is attempting to set a dangerous precedent that would greatly prejudice plaintiffs in all types of cases everywhere.  Plaintiffs should not be subjected to standards of criminal law enforcement in order to subpoena information where a tort, if proven by a reasonable doubt in a criminal proceeding could also be crime.  Any such holding would have unimaginable ripple effects that would unfairly prejudice plaintiffs in innumerable types of actions.

In the context of a civil suit, it is premature for Defendant to review Plaintiff's evidence at this stage in the litigation process.  The time for doing that is after a 26(f) conference and in response to lawfully propounded discovery.  Plaintiff's investigators will be available to sit for deposition and its documents will be available in response to a document request propounded on Plaintiff and a third

party subpoenas served on IPP, Limited.  Plaintiff will cause IPP, Limited to accept service of a subpoena via delivery to Plaintiff's counsel and will otherwise act reasonably to ensure the discovery process will go smoothly.

### B. Defendant's Assertions Are Merely a Denial

Defendant's arguments that anyone could have access to his Internet are not proper at this stage of litigation.  Through a TCP/IP direct computer to computer connection, IPP, Limited recorded Defendant's IP Address distributing a piece of Plaintiff's copyrighted movie to its investigative service.  Defendant's internet service provider, the company which assigns IP addresses to individuals, identified Defendant as the owner of the IP address which infringed Plaintiff's work.  The assertion that Defendant infringed Plaintiff's copyright is reasonable and logical because the subscriber is the most likely user of the service for which he or she pays.  The situation is strikingly similar to that of a car owner who receives a ticket after a camera takes a picture of his or her car running a red light.  Defendants may assert a defense that he or she lent his car to another at the appropriate time.  The ticket goes to the registered owner because the license plate is the only way to identify the person.  At this stage of the proceeding, Defendant's arguments are premature and constitute nothing more than a general denial of liability, which he admits is not appropriate in a Motion to Quash.  (See Def's Mot. Quash at 2.)

Defendant cites <u>AF Holdings LLC v. Does 1-96</u>, 2011 WL 4502413 (N.D. Cal. 2011) to support his argument.  This opinion holds that since Plaintiff admitted that more discovery may be necessary to identify the infringer that joinder is in appropriate.  First, Plaintiff does not so admit here.  Following the receipt of the Doe Defendants identities Plaintiff will discuss the matter with the Doe Defendants without the aid of additional formal discovery and make its determination of who to pursue, which will be almost all of the Defendants who are not destitute.  Indeed, Plaintiff can plead negligence against any particular Doe Defendant.  See <u>Liberty Media Holdings, LLC v. Swarm of November 16, 2010</u>, 2011 WL 1597495, *4 (S.D.Cal. 2011) (holding a claim for negligence could withstand a motion to dismiss).

Second, the <u>AF Holdings, LLC</u> opinion was issued by Magistrate Judge Corley who apparently was not aware that Congress specifically enacted the Digital Theft Deterrence Act of 1999 to deter on-line infringement.[3]  Congress

---

[3] "By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works. The advent of digital video discs, for example, will enable individuals to store far more material than on conventional discs and, at the same time, produce perfect secondhand copies. . . . <u>Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action</u>. In light of this disturbing trend, <u>it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct</u>. H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement." H.R. Rep. No. 106-216, at 3 (1999).  (Emphasis added).

clearly intended for subpoenas to be issued to ISPs to learn the identities of infringers because that is the only way to proceed with this type of litigation. Had Magistrate Corley been so aware of Congress' intent when enacting the Digital Theft Deterrence Act of 1999, then her opinion in the AF Holding case, which cannot be described as anything other than plain error or judicial nullification of express legislative intent, would almost certainly not have been issued.

Significantly, six other judges in the Northern District of California disagree with Magistrate Corley. As Chief Magistrate Judge James, summed up the Northern District of California's decisions:

> This Court has carefully reviewed such decisions and notes that they are highly dependent on the information the plaintiff presented regarding the nature of the BitTorrent file-sharing protocol and the specificity of the allegations regarding the Doe defendants' alleged infringement of the protected work. Both of these factors guide the Court's joinder analysis . . . [in concluding joinder is proper].

See Patrick Collins v. Does 1-2590, 2011 WL 4407172 (N.D. Cal. 2011), noting that "[r]ecently, courts in this District . . . have come to varying decisions about the proprietary of joining multiple defendants in BitTorrent infringement cases". See also, New Sensations, Inc. v. Does 1-1,474, 2011 WL 4407222, (N.D.Cal. 2011) (same.) Accord Hard Drive Productions, Inc. v. Does 1–46, 2011 U.S. Dist. LEXIS 67314 (N.D. Cal. 2011) (same); New Sensations, Inc. v. Does 1745, 2011 WL 2837610 (N.D. Cal. 2011) (same, and opining "Judge Howell of the D.C.

Circuit has repeatedly held that in infringement actions" joinder is proper "[h]is analysis makes sense.")[4]  Here, the Defendants would not be severed from this matter under the rule used by almost all of the judges in the Northern District of California, all of the judges in Illinois, New York and everywhere else around the country.

Judges throughout the country acknowledge that a denial is not a basis to deny discovery:

> [I]f these putative defendants are named as defendants in this case, they may deny allegations that they used BitTorrent to download and distribute illegally the plaintiff's movie, present evidence to corroborate that defense, and move [for summary judgment] . . . <u>A general denial of liability, however, is not a basis for quashing the plaintiff's subpoenas and preventing the plaintiff from obtaining the putative defendants' identifying information. That would deny the plaintiff access to the information critical to bringing these individuals properly into the lawsuit to address the merits of both the plaintiff's claim and their defenses.</u>

<u>Hard Drive Productions, Inc. v. Does 1-118</u>, 2011 WL 5416193, *4 (N.D. Cal. 2011), citing <u>Voltage Pictures, LLC v. Does 1–5000</u>, 2011 WL 1807438, at *2 (D.D.C. May 12, 2011).  (Emphasis added).  Accord <u>K-Beech, Inc. v. Does 1-57</u>, 2011 WL 5597303 (M.D. Fla. 2011)  (holding "Plaintiff's interest in knowing

---

[4] <u>See</u> <u>Pacific Century Intern v. Does 1-43</u>, 2011 WL 4725243 (N.D. Cal. 2011) (a poorly reasoned opinion holding that if Plaintiff admits additional discovery is needed to proceed against the correct person then joinder is improper.) <u>Cf</u> <u>Liberty Media Holdings, LLC v. Swarm of November 16, 2010,</u> 2011 WL 1597495 (S. D. Cal. 2011) (holding a claim for negligently letting others to use your internet could withstand a motion to dismiss).  Here, Plaintiff intends to pursue each Doe Defendant.

Defendant's true identities outweighs Defendant's interests in remaining anonymous.")

### C. Plaintiff Has A Proper Purpose

From reports received by Plaintiff's investigator, IPP Limited, Raw Films knows that its movies are being illegally downloaded through the BitTorrent peer-to-peer file sharing protocol by people residing in the U.S. well over 100,000 times a month. Indeed, the adult entertainment industry has been particularly hard hit by the online infringement of its copyrights. According to a Miami New Times survey, thirty two percent (32%) of respondents <u>admit</u> to illegally downloading their adult movies.[5]

#### 1. Professional Digital Pirates Situate Themselves Overseas; And, Thumb Their Noses at Copyright Owners

Plaintiff sues the only people it can – end users. To explain, there are three types of entities which can be sued for BitTorrent infringement: (a) BitTorrent Clients (the software companies), (b) torrent websites, and (c) end users. As to BitTorrent Clients, context is needed to understand the difficulties. Specifically, to avoid a claim for contributory infringement, in 2001, contemporaneously with Napster's demise, Grokster, a company that studied the <u>A&M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004 (2001) decision, introduced software and a system

---

[5] <u>See</u> http://business.avn.com/articles/video/Miami-New-Times-Releases-Sex-Survey-Results-447237.html

intentionally designed so that Grokster could not tell what was being shared among and between its users.  Grokster promoted itself as Napster's replacement; its efforts led to <u>MGM Studios, Inc. v. Grokster, Ltd.</u> 545 U.S. 913 (2005) wherein the United States Supreme Court unanimously held that Grokster could be sued for "inducing" copyright infringement for marketing file sharing software.  Since BitTorrent has legitimate non-infringing uses, unless a particular BitTorrent Client expressly advertises itself as a means to accomplish copyright infringement, like Grokster did in another context, then a case against said BitTorrent Client would be tough.  Moreover, there are countless BitTorrent Clients, they are available for download for free, and many of these companies are located outside the reach of U.S. courts on purpose.

   A suit against the digital thieves running torrent websites, where infringers go to download and distribute songs and movies, would and has been successful. <u>See</u> <u>Columbia Pictures Industries, Inc. v. Fung,</u> 2009 WL 6355911 (C. D. Cal. 2009). Unfortunately, litigating against torrent sites is virtually impossible because torrent sites intentionally situate themselves overseas in jurisdictions that do not enforce U.S. copyright laws.  For example, one of the most popular torrent sites, obnoxiously thumbs its nose at U.S. copyright owners by posting its responses to demand letters on its website.  <u>See</u> its response to Dreamworks, Inc.'s demand letter stating: "Sweden is a country in northern Europe . . . no Swedish law is being

violated . . . you are morons, and you should please go sodomize yourself with retractable batons."[6]  The self proclaimed "Biggest Torrent System", Extratorrent.com, which illegally distributes Plaintiff's movies, not only hides itself in Somalia but changed the top level of its domain from .com to .ws in anticipation of a U.S. Bill entitled Combating Online Infringement and Counterfeits Act ("COICA") becoming law.[7] COICA which failed to pass in 2010 would have given the U.S. Department of Justice the power to take down ".com" sites because the ".com" registrar resides in the U.S.

On May 12, 2011, a rewritten version of COICA was reintroduced by Senator Leahy as the Protect IP Act.  The Protect IP Act allows the U.S. government to seize the domain name of sites used in foreign jurisdictions.[8] However, the Protect IP Act does nothing to prohibit an internet user from simply typing in the IP Address of the site.  Therefore, Plaintiff fully expects the torrent sites will start advertising themselves as 123.4.567.89 and the like soon.  The Pirate Bay, a notorious torrent site hosted in Sweden, made a statement on their

---

[6] See http://static.thepiratebay.org/dreamworks_response.txt
[7] See http://extratorrent.com/ the red lettering on the home page which states please pay attention "[w]e are in the process of migrating the site to our new domain extratorrent.ws."
[8] While Plaintiff very much supports the Protect IP Act, Plaintiff recognizes that many of the Bill's provisions are controversial.  For example, there are substantial First Amendment free speech issues which will likely make enforcing the law difficult for years until the Supreme Court adjudicates the Bill's Constitutionality.  Further, the Bill pits the interests of internet service providers, tube sites such as www.youtube.com and social media sites such as Twitter and Facebook against copyright content producers.  Despite the tug of war between interest groups, the Bill does have popular Congressional support and would likely pass.  Unfortunately, Senator Wyden (OR-D) has pocket vetoed it and will likely continue doing so.

blog about international efforts to block their website:

> Today we learned that we're being blocked - again! Yawn. When will they give up - we're still growing despite (or perhaps because) all their efforts. So, if you live in Belgium (or maybe work at the European Union Parliament, we have thousands of visits from them every day) you should change your DNS in order to circumvent the blockage. You should do this anyhow - never trust your ISP.

<u>TPB Censored, Again and Again and Again</u> (Oct. 4, 2011) available at http://thepiratebay.org/blog.  Moreover, the power to seize domain names has repetitively been used by the U.S. Immigrations and Customs Enforcement (ICE) for quite some time now and has little effect on the business of piracy because the pirates merely buy another domain name and barely miss a beat.[9]

Other efforts to curb copyright infringement, such as throttling down the internet speeds of users of BitTorrent have been met with substantial opposition. Indeed, Comcast settled a class action for 16 million dollars for throttling[10] and Clearwire[11] and Time Warner[12] were sued earlier this year in class action suits as well.  Additionally, Google now has software that enables consumers to detect ISP throttling efforts so that consumers can migrate toward companies that do not

---

[9] See https://www.eff.org/deeplinks/2011/02/what-congress-can-learn-recent-ice-seizures; and http://www.zeropaid.com/news/91400/ice-domain-seizures-a-pointless-exercise/

[10] See http://www.xtemu.com/forum/topic/2878-comcast-settles-p2p-throttling-lawsuit-customers-to-get-refunds/

[11] See http://classactionlawsuitsinthenews.com/class-action-lawsuit-complaints/clearwire-class-action-lawsuit-complaint-filed-over-alleged-internet-data-throttling/

[12] Fink v. Time Warner, 2011 WL 3962607 (S.D.N.Y. 2011)

employ this tactic.[13]  And, there are how-to manuals which teach pirates how to avoid detection as a high band width user and thus not have their internet speeds throttled.[14]

### 2. Plaintiff Has Brought The Suit For A Proper Purpose

Raw Films is a foreign corporation that has been in business for many years. It is one of the most prominent, popular and critically acclaimed adult movie studios in the world.  Raw Films success is a result of the enormous time, effort, and investment Raw Films puts into making its movies.  These movies require extensive and time consuming pre-production and creative planning, customer interaction, an intense production schedule, and editing. Since 2006, when BitTorrent became the preferred method for infringement, Raw Films noticed a substantial decrease in its revenue.

Raw Films has done everything to ameliorate its situation, including constructing a company to fight piracy. To date, piracy continues to devastate the company.  Raw Films brings these suits to receive compensation for its lost revenues and to deter infringement.  If there was any easier way to stop the infringement, Raw Films would immediately pursue it.

### 3. Defendant's Support for Improper Purpose is Unwarranted

Defendant relies heavily on the order issued by the Honorable Judge Gibney

---

[13] http://torrentfreak.com/google-joins-fight-against-bittorrent-throttling-isps-090128/
[14] http://lifehacker.com/295995/stop-your-isp-from-throttling-bittorrent-speeds?tag=softwarebittorrent

in the Eastern District of Virginia.  See Raw Films, Ltd. v. John Does 1-32, No. 3:11-cv-532 (E.D. VA. 2011).  This decision was decided sua sponte without plaintiffs being afforded the opportunity to brief the issue.[15]  At the time this decision was made, the Honorable Judge Gibney was unaware of any of the myriad of cases that hold joinder is proper as evidenced by his finding pursuant to Rule 11 that "the joinder of unrelated defendants does not seem to be warranted by existing law." Id. at *5.

Plaintiff clearly has a proper purpose and will demonstrate that at the hearing on December 20th, 2011.  Plaintiff's purpose is plain and simple: to receive compensation for the mass theft of its property and deter future infringement.  The Honorable Judge Gibney's factual finding that Plaintiff harassed Doe Defendants was based on hearsay evidence from motions which on their face, discussed the conduct of other attorneys dealing with other clients.  In short, Plaintiff has just not yet been able present its case to Judge Gibney but is confident that once he understands all of the facts he will conclude Plaintiff's purpose is proper.

Indeed, similar plaintiffs had already won in that district after two hearings and two full sets of briefs.  See Patrick Collins, Inc. v. Does 1-35, 11-cv-00406 (E.D.

---

[15] Judge Gibney's record of achievement is indisputably admirable.  Notwithstanding the foregoing, he admitted during his confirmation hearing earlier this year that while he was comfortable with all the other issues that may be presented before a federal court, he had no experience with intellectual property.  See Gibney Becomes Federal Judge, Daily Local News (January 01, 2011) available at http://www.dailylocal.com/articles/2011/01/01/news/srv0000010462832.txt?viewmode=3

VA 2011) (Dkt. 15): "[T]he court follows the weight of authority in finding plaintiff is entitled to discovery at this stage to determine the identities of John Doe Defendants."

Recently, a Maryland court expressly cited to, quoted, and expressly disagreed with Judge Gibney's decision: "[c]onsidering the two requirements for permissive joinder under Federal Rule 20(a)(2) as they apply to the instant action, the Court finds that at this procedural juncture, joinder of the putative Defendants is proper." See Patrick Collins, Inc., v. Does 1-11, Case 11-cv-01776-AW, *3-4 (D. MD 2011). Similarly, another judge in 4th Circuit from North Carolina also held joinder was proper last week. See Patrick Collins, Inc. v. Does 1-26, Case 3:11CV394-FDW-DSC (N.C. 2011), Dkt 19.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: November 22, 2011

                Respectfully Submitted,

By: /s/ *James M. Johnson*
    Bryan M. Knight
    Georgia Bar No. 142401
    James M. Johnson
    Georgia Bar No. 394615
    Attorneys for Plaintiff

KNIGHT JOHNSON, LLC
Promenade Two |19th Floor
1230 Peachtree Street
Atlanta, Georgia 30309
P: (404) 228-4822
F: (404) 228-4821
*bknight@knightjohnson.com*
*jjohnson@knightjohnson.com*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), N.D. Ga. L.R., I hereby certify that the PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO JOHN DOE'S OBJECTION has been prepared using one of the font and point selections approved by the Court in Local Rule 5.1B, N.D. Ga. This document was prepared using Times New Roman (14 pt.).

This 22nd day of November, 2011.

/s/ *James M. Johnson*
James M. Johnson
Georgia Bar No. 394615
Attorney for Plaintiff

KNIGHT JOHNSON, LLC
Promenade Two |19th Floor
1230 Peachtree Street
Atlanta, Georgia 30309
P: (404) 228-4822
F: (404) 228-4821
*bknight@knightjohnson.com*
*jjohnson@knightjohnson.com*